UNITED STATES of America,
Plaintiff-Appellee,

v.

Boyd WOODSON, Defendant-Appellant.

No. 74–3379.

United States Court of Appeals,
Ninth Circuit.

Nov. 24, 1975.

Marvin E. Stender (argued), Stender, Stender & Weinberg, San Francisco, Cal., for defendant-appellant.

John D. O'Connor, Asst. U. S. Atty. (argued), San Francisco, Cal., for plaintiff-appellee.

OPINION

Before DUNIWAY and KENNEDY, Circuit Judges, and BURNS,* District Judge.

PER CURIAM:

Appellant (Woodson), an employee of the Alameda Naval Air Station (NAS),

* Honorable James M. Burns, United States District Judge, District of Oregon, sitting by designation.

was convicted by a jury of all of the four counts of the indictment. Two charged theft of government property and two charged the sale of that property. 18 U.S.C. § 641. Woodson appeals from the resulting judgments of sentence, claiming error in two respects: (1) insufficiency of the evidence as to ownership and source of the property involved, and (2) error in the jury instructions as to handwriting. We affirm.

The property involved consisted of two separate batches of jet engine parts— one a group of stator vane blades, and the other a number of turbine blades.

The government's evidence showed that a scrap metal dealer bought, on November 3 and November 17, 1973, two separate batches of aircraft parts from a person identified by the dealer as Woodson. The dealer said the seller of the scrap signed the invoices as "S. Bell" and "Samuel Bell." On one of the two occasions, the seller was driving a vehicle registered to Woodson. On a third occasion, the same person offered to sell other aircraft parts to the scrap dealer. When asked the sources, that person told the dealer the parts were "hot" and that he had brought them from "Alameda."

Government employees identified some of the parts as bearing stamps they affixed as part of the inspection process. Other evidence showed the items sold, in all likelihood, could only have come from the NAS at Alameda, and were like the parts missing at about the time of the sales to the scrap dealer.

■ Under these circumstances, the evidence was clearly sufficient to permit the jury to conclude that the parts purchased by the scrap dealer were both (a) property belonging to the government, and (b) stolen.

■ Woodson's other assignment of error is based on the government's handwriting expert's inability to say that the "Bell" signatures on the invoices and defendant's handwriting exemplars were of common or dissimilar authorship. Hence defendant claims it was error to instruct the jury that it was free, under the usual rule permitting it to either accept or reject part or all of the testimony of an expert, to find the questioned and admitted signatures were those of the same person. Woodson cites us no case authority for this novel proposition, nor does reason support it. In the absence of extreme or unusual circumstances not present here, we see no reason why handwriting comparisons cannot be made by jurors, and conclusions drawn from them, either in the presence or absence of expert opinion. 28 U.S.C. § 1731; Federal Rules of Evidence, Rule 901(b)(3); *People v. Weiskopf*, 60 Cal.App. 2d 214, 140 P.2d 201, 203 (1943). Indeed, the dealer here testified that Woodson was the one who signed the "Bell" invoices. Under these circumstances, the instruction[1] permitting the jury to find

1. The actual instruction given was as follows:

The rules of evidence ordinarily do not permit witnesses to testify as to opinions or conclusions. An exception to this rule exists as to those whom we call "expert witnesses." Witnesses who, by education and experience, have become expert in some art, science, profession, or calling, may state an opinion as to relevant and material matter, in which they profess to be expert, and may also state their reasons for the opinion.

You should consider each expert opinion received in evidence in this case, and give it such weight as you may think it deserves. In this case we had the expert opinion of the handwriting expert, and if you should decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude that the rea-sons given in support of the opinion are not sound, or that the opinion is outweighed by other evidence, you may disregard the opinion entirely.

You heard his opinion in this case, and if his testimony on that point satisfies you, you will accept it, but you are not obligated to accept the testimony of an expert witness any more than you are of any other witness.

When the genuineness of handwriting is at issue, there are persons who make a career of analyzing handwriting differences. This may be a somewhat different specialty in the law, and I think you may find that the best function of a handwriting expert is to point out to you the various characteristics of handwriting that lay people might be inclined to overlook in comparing one set of handwriting with another. Lay people are

common authorship, and to base verdicts thereon was not only not erroneous, but was entirely proper. *U. S. v. Ranta*, 482 F.2d 1344 (8 Cir. 1973).

Affirmed.

perfectly entitled to arrive at their own conclusion about the similarity of one document with another as to the person who produced it.