UNITED STATES of America, Appellant,

v.

Londer FLENORY.

No. 79–2648.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit Rule 12(6) March 18, 1980.

Decided April 29, 1980.

Robert J. Cindrich, U. S. Atty., Frederick W. Thieman, Asst. U. S. Atty., Pittsburgh, Pa., for appellant.

George G. Mahfood, Pittsburgh, Pa., for appellee.

Before ALDISERT and GIBBONS, Circuit Judges and GERRY, District Judge.*

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

Londer Flenory, indicted for violations of 18 U.S.C. §§ 2113(a) and 2113(d) for his alleged participation in a July 17, 1979 bank robbery, moved prior to his trial to suppress evidence of all out-of-court identifications and to prohibit in-court identification testimony as well. After a hearing the district court ordered the suppression of all out-of-court identifications, and ruled, further, that no in-court identifications by the robbery victims would be permitted unless the Government first introduced some other reliable and trustworthy evidence identifying Flenory as the robber. The Government appeals pursuant to 18 U.S.C. § 3731. We reverse.

The evidence presented at the suppression hearing discloses that on July 17, 1979 the Oliver Plaza Branch of Mellon Bank in Pittsburgh, Pennsylvania, was robbed. On the same day investigating officers presented to the bank employees a photographic array which did not include Flenory's photograph. No identification resulted. Two days later an agent of the Federal Bureau of Investigation presented to the bank employees another photographic array which, like the first, did not include Flenory's photograph. Again no identification was made. On August 2, 1979, the F.B.I. agent showed the bank employees nine additional photographs, including one of Flenory. Each employee who witnessed the robbery was shown the photographs separately, and

---

* Hon. John F. Gerry, United States District Judge for the District of New Jersey, sitting by designation.

was told that the robber was not necessarily included. The nine photographs are front and side view mug shots of the head and shoulders of nine black males. The victims had previously described the robber as a black male without facial hair, with a neat appearance, and a short afro-style haircut. The nine photographs fit that description, except that one had a very short haircut and three had slight facial hair. Bank employees Cristallino, Ung, and Bartz selected Flenory's photograph as that of the robber. The F.B.I. agent, Cristallino, and Ung testified at the suppression hearing, and there is no indication in their testimony that Flenory's photograph was emphasized in any way over the others. The photographs themselves are similar in format and do not tend in any way to suggest one over another as the likely robber.

Following the August 2, 1979 photo identification the F.B.I. agent filed a complaint charging Flenory with the robbery, and a warrant issued for his arrest. He was arrested on August 10, 1979, and retained counsel. On August 24, 1979, with his counsel present, Flenory was placed in a lineup viewed by bank employees Cristallino, Ung, Bartz, and Cocere. At his counsel's suggestion, all participants were dressed in coveralls. Counsel made no objection to the six participants in the lineup. The record contains photographs of the lineup with front and side views of the participants. Two of the six black males depicted have facial hair and one has a slight goatee. One of those with facial hair also has a distinctive hairstyle different from that included in the description of the robber. Three are clean-shaven and fit the victims' description of the robber rather closely. The testimony about the method of conducting the lineup establishes that no suggestive instructions were given to the bank employees. Cristallino and Ung identified Flenory as the robber; Bartz and Cocere did not.

Neither Bartz nor Cocere testified at the suppression hearing. Cristallino and Ung did testify. Cristallino had had five to seven minutes to observe the robber in well-lit conditions during the robbery. On cross-examination she said, "I would say he looked like the man who held me up. I will not swear that is the man who held me up." Ung's opportunity to observe the robber was more fleeting, but she heard his voice. Ung expressed doubt about her identification in the August 2, 1979 photo display, but was more confident of her lineup identification because she heard Flenory say a few phrases. In response to the court's question, however, she refused to testify that the person she identified in the lineup was beyond any reasonable doubt the robber.

The court ruled that the August 2, 1979 photographic array was impermissibly suggestive, reasoning:

> This conclusion is borne out by the fact that Bartz could not identify the Defendant as being the robber, when Bartz subsequently viewed the line-up that contained the Defendant in person.

> .    .    .    .    .

> Where witnesses are unable to positively identify the Defendant as being the robber when he was standing in front of them at the line-up, a fortiori, the prior purported photographic identification is suspect.

Turning to the lineup, the court observed:

> Of the four witnesses who viewed the line-up, only two of the witnesses, namely Cristallino and Ung selected the Defendant. However, testimony of Cristallino and Ung at the suppression hearing revealed that their selection of the Defendant was tentative and both of said witnesses refused to testify with certainty that the Defendant who they had selected in the line-up was, in fact, the man who robbed the bank.

As to the proposed in-court identification, the court conceded that each proposed witness had an independent basis for such an identification. But because Cristallino, Ung, and Bartz were not positive in their lineup identifications, the court concluded

that "it seems highly improbable that they would be able to positively and properly identify the Defendant in the Court Room, especially since more time has elapsed since the happening of the robbery." For this reason the district judge ruled that Cristallino and Ung would be permitted to make an in-court identification only if "the Government shall first introduce some other reliable and trustworthy evidence identifying the Defendant as the robber."

The Supreme Court in *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), and *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), recognized that the serious risk of misidentification required the imposition of limitations upon police practices which tended to maximize that risk. The Court could have approached the problem from the standpoint of the confrontation clause of the sixth amendment, by holding that an out-of-court identification was hearsay, substantively inadmissible for the truth of the matter asserted. That approach would have restricted to the use of an out-of-court identification or a failure to identify to impeachment. The Court chose not to do so, ruling that identifications were not governed by the confrontation clause, but rather by the rights to counsel, *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and to due process. *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *see Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) (voice identification). The Court in those cases established rules for the manner in which the police could conduct photo or lineup displays for the purpose of making pretrial identifications. We need not in this case consider to what extent the rules laid down in the *Wade* trilogy have been modified by *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), and *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), for it is clear that on this record there was full compliance with *Wade, Gilbert*, and *Stovall* both in the photo display and in the lineup. Nothing here points to undue suggestiveness.

The trial court relied on the inability of Bartz to pick Flenory out of the photographs, but that factor tells us nothing, for Bartz did not testify, and we can only speculate about his opportunity to make an observation at the time of the robbery. Indeed, if his inability to make an identification suggests anything, it suggests that the photo display was not unfairly tilted toward identification of anyone. The court, in suppressing the photo identifications, also relied on the failure of the witnesses to make a positive identification in the face-to-face lineup. That factor, while it may bear upon the value of the photo identification as substantive evidence of its truth, does not bear at all on whether it was conducted in so unduly suggestive a manner as to violate due process.

■ The court relied on two factors in suppressing the lineup identification: the lack of certainty of Cristallino and Ung; and the failure of two other bank employees to make an identification. Again, however, the court confused factors going to the weight that a factfinder may attach to the identification with factors going to undue suggestiveness. Since there was full compliance with the *Wade* trilogy there was no due process violation. *Cf. United States v. Crews*, —— U.S. ——, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980). We conclude, therefore, that the order suppressing the photo and lineup identifications was improper and must be reversed.

■ As to the order laying down preconditions to in-court identifications by Cristallino and Ung, the district court made the same analytical error of confusing factors going to the weight of that direct testimony with factors going to its admissibility. Had it found that the only sources of the Cristallino and Ung identifications were due process violations by the police, the remedy

would be to preclude admission entirely. But having found that there is an independent basis for their in-court identifications, the court must admit them subject to no precondition other than testimony as to the physical facts establishing their opportunity to observe. All else goes to weight, not admissibility.

If, at trial, Cristallino and Ung make in-court identifications, it will obviously be proper to cross-examine them about the uncertainty of both their photo and lineup identifications. If the Government attempts to bolster their in-court identifications by offering their out-of-court identifications substantively for the truth of the matter asserted, the court will have an opportunity to consider whether, in view of the tentativeness of those prior identifications, their value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or delaying the trial. Fed.R.Evid. 403. If Cristallino and Ung are unable to make in-court identifications, and if no evidence other than their photo and lineup identifications connects Flenory to the robbery, the trial court can consider whether those identifications are so weak that a motion for judgment of acquittal under Fed.R.Crim.P. 29 should be granted. But on the present record the order suppressing evidence of the photo and the lineup identifications, and suppressing in-court identification testimony in the absence of other independent trustworthy proof identifying Flenory as the robber, must be reversed.