**GREATER KANSAS CITY LABORERS PENSION FUND, Greater Kansas City Laborers Welfare Fund, Greater Kansas City Laborers Vacation Plan, Greater Kansas City Laborers Training Fund, Appellees,**

v.

**Elmer THUMMEL, d/b/a Thummel Construction Company, and E. Thummel Construction Company, Appellants.**

No. 83–1906.

United States Court of Appeals, Eighth Circuit.

Submitted April 12, 1984.

Decided July 9, 1984.

Order of Aug. 27, 1984.

Albert J. Yonke, Michael C. Arnold, Yonke, Shackelford & Arnold, P.C., Kansas City, Mo., for appellees.

Robert A. Sundblad, Kansas City, Mo., for appellants.

Before BRIGHT, Circuit Judge, HENLEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

HENLEY, Senior Circuit Judge.

This is an action by four employee benefit funds against Elmer Thummel individually and E. Thummel Construction Company, a corporation owned by Elmer Thummel and his wife. The funds sought an accounting with respect to contributions Thummel and the corporation were alleged to owe and judgment in the amount found to be owed. The district court[1] found Thummel and the corporation to be liable to the funds for unpaid contributions, and

---

1. The Honorable Ross T. Roberts, United States District Judge, Western District of Missouri.

also awarded attorneys' fees. Thummel appeals. We affirm.

There are several issues on appeal. Thummel claims that he never signed the contract by which he became obligated to make contributions to the union funds. Next, he argues that the contract was inadequately authenticated and not the best evidence, and that it should have been excluded from evidence. Third, the corporation contests its liability under the contract. Thummel also contends that the agreement does not cover non-union employees for any period or require any contribution for any employee for the period extending from April 2, 1976 to October 13, 1976. Finally, Thummel challenges the district court's determination of attorneys' fees.

## 1. The Contract.

The funds offered into evidence a purported carbon copy of a "Laborers Contract Stipulation." This contract required Thummel to make the payments at issue here. Thummel argues first that the carbon copy is not admissible.

■ Generally, carbon copies are admissible as originals under Federal Rule of Evidence 1001(3). See Notes of the Advisory Committee, Paragraph 3. One union official testified that these agreements were executed in quadruplicate, and another official, Mr. McKamey, testified that he saw Mr. Thummel sign the agreement.

There is an additional problem in this case, however. At the signature line was a dim carbon signature of what appeared to be Thummel's name. Someone had written Thummel's name over the signature in blue ink. The parties stipulated that the blue ink rendition of Thummel's name was not Thummel's signature. Thummel argues that because the most important part of the contract, Thummel's signature, was "obscured, covered, and obliterated," the document should be treated as a duplicate under Fed.R.Evid. 1003 instead of an original. Since duplicates are not admissible if a genuine question is raised as to the authenticity of the original, Thummel contends that the carbon copy should have been excluded.

■ If the funds had offered the top copy of the agreement, the paper which contained the ink signature of Thummel rather than the carbon signature, and if that signature had been obscured in a manner similar to that of the carbon here, the document would clearly be admissible under Fed.R.Evid. 1001. The fact that the signature was obscured would go to the weight attached to the document, not to its admissibility. We see no reason for treating a carbon any differently. There was evidence that the contract was executed in quadruplicate, and that the second, third and fourth copies were not always signed individually, but were usually placed under the top copy and separated by sheets of carbon paper. This is sufficient to qualify a carbon copy as an original, and we see no error in its admission.

■ Thummel's second argument concerning the contract is that the district court should not have considered the resemblance of the obscured signature to Mr. Thummel's admitted signature without the benefit of expert assistance. The district court, in concluding that Mr. Thummel had signed the agreement, relied in part on the resemblance of visible letters in the obscured signature to those letters in Mr. Thummel's admitted signature. Thummel admits that generally the trier of fact may compare a contested sample of handwriting with an authenticated sample and decide that the contested sample is authentic even in the absence of expert testimony. *United States v. Clifford,* 704 F.2d 86, 90–91 (3d Cir.1983); *United States v. Ranta,* 482 F.2d 1344, 1346 (8th Cir.1973). Thummel argues that the fact that the contested signature has been obscured takes the determination out of the realm of the factfinder's ability, and requires an expert. In *Clifford,* the Third Circuit held that the jury could compare a criminal defendant's admitted cursive writing with the block letter writing in threatening letters. 704 F.2d at 90. *Clifford* shows that handwriting exemplars do not have to be in the exact

same form in order for the factfinder to compare them.

Further, the signature on the contract is not the only evidence upon which the district court relied to find that Mr. Thummel signed the contract. The district court relied on Mr. McKamey's testimony that he saw Mr. Thummel sign the contract, and on the fact that soon after McKamey signed the contract Mr. Thummel began making the required payments. It is likely that these two facts would be sufficient to support a finding that Mr. Thummel signed the agreement even without the district court's comment that the visible letters in the purported signature were similar to the "distinctive" way in which Mr. Thummel admittedly signed his name. The district court does not appear to have placed undue reliance on his observation, and we cannot conclude that his finding of fact on the issue of whether Mr. Thummel signed the contract is clearly erroneous.

### 2. Corporate and Individual Liability.

From the late 1960's to the early 1980's, Mr. Thummel operated his masonry business as a sole proprietorship. In September, 1980 a corporation named "E. Thummel Construction Company" was formed. Mr. Thummel and his wife own all the stock. Mr. Thummel testified that the corporation does primarily commercial masonry work, whereas his sole proprietorship did mostly residential work. He explained that he finished all the sole proprietorship's jobs before beginning to do business as a corporation.

The funds claim that Mr. Thummel and the corporation are jointly and severally liable for the unpaid contributions from 1976. The funds contend that the corporation is the "alter ego" of the sole proprietorship, and that the corporation is thus obligated to continue making fund contributions under the contract signed by Mr. Thummel.

The district court found that the corporation was the "alter ego" of the sole proprietorship rather than a mere successor.[2] Thummel challenges this finding. We note that this is a finding of fact which we must affirm unless it is clearly erroneous.

A finding that two businesses are alter egos is proper if based on "substantial identity in terms of corporate ownership, management, business purpose, operation, equipment, customers, and supervision." *NLRB v. Campbell-Harris Elec., Inc.*, 719 F.2d 292, 295 (8th Cir.1983). Continuity of the work force would also appear to be relevant. *NLRB v. Tricor Products, Inc.*, 636 F.2d 266, 270 (10th Cir.1980). The district court noted that at some point in 1981 the sole proprietorship ceased to engage in business and all future business was carried on by the corporation; that Mr. Thummel and his wife continued to perform the same tasks for the corporation that they performed for the sole proprietorship; that the corporation, like the sole proprietorship, leased the equipment it used from another corporation owned by Mr. Thummel; that the corporation, like the sole proprietorship, operated out of an office in the Thummel home; that the corporation has at one time or another employed various persons who at one time or another had been employed by the sole proprietorship; that the sole proprietorship's only laborer employee from November, 1980 through February, 1981 was the corporation's sole laborer employee in March and April, 1981; and that the corporation continued the sole proprietorship's practice of making monthly contributions to plaintiff funds on behalf of some of its laborer employees. The district court took

**2.** The district court assumed that if the corporation was found to be the "alter ego" of the sole proprietorship, the corporation and Mr. Thummel would be jointly and severally liable for all unpaid contributions and damages. On appeal, Mr. Thummel does not challenge this assumption. While it may be doubted that in many similar cases imposition of joint and several liability would be appropriate, *see Audit Services, Inc. v. Rolfson*, 641 F.2d 757, 764 (9th Cir. 1981); *Seymour v. Hull & Moreland Engineering*, 605 F.2d 1105, 1111–13 (9th Cir.1979), we do not consider the matter preserved for our review and therefore will not consider it.

into account the evidence which tended to show that the corporation was not the alter ego of the sole proprietorship. We have no difficulty in concluding that the district court's conclusion is not clearly erroneous.

■ Thummel argues that the district court's finding that Mr. Thummel's change of business entities was not motivated by anti-union bias precludes a finding that the corporation is the proprietorship's alter ego. We disagree. While certainly a finding that a change in business entities was motivated by union bias or a desire to avoid a collective bargaining agreement would support an alter ego finding, it is not necessary to such a finding. The district court's conclusion that Mr. Thummel incorporated solely for economic reasons cuts against a conclusion that the two businesses were alter egos, but it is not determinative. *NLRB v. Tricor Products, Inc.*, 636 F.2d at 270. The district court here gave proper weight to the fact, but it decided that the rest of the evidence indicated alter ego status. As indicated, that ultimate finding is not clearly erroneous.

### 3. Amount of Thummel's Liability.

■ Thummel makes several arguments concerning the amount of money the district court found was owed to the funds. First he argues that the agreement does not require contributions on behalf of non-union employees. The district court found that non-union employees were covered. We agree. While the agreement is perhaps not as specific as the agreement in *Audit Services, Inc. v. Rolfson*, 641 F.2d 757, 761 (9th Cir.1981), the clear intent was for non-union employees to be covered. *See Carpenters & Millwrights v. Gardineer Dry Walling Co.*, 573 F.2d 1172, 1177 (10th Cir.1978); *Manning v. Wiscombe*, 498 F.2d 1311, 1313 (10th Cir.1974).

Thummel also argues that the district court required contributions on behalf of individuals who worked for him personally, not for his business. We note that the district court accepted in part the testimony of an auditor over Thummel's testimony. This was a matter of credibility to be determined by the district court, and we will not overrule his conclusions here.

■ Finally, Thummel contends that the district court erred in requiring contributions back to April, 1976 instead of October, 1976. It does not appear that Thummel raised this argument before the district court. Thummel simply denied that he had ever signed the contract or that McKamey, who signed on behalf of the union, ever called upon him. When an auditor testified to contributions due from April 2, 1976, counsel for Thummel reserved the right to question the classifications of employees but raised no objection to use of the April date. In awarding judgment initially, the district court called for certain new calculations and adjustments to be made within ten days. We are not aware that even post-trial the defendant proposed any adjustment based on alleged use of an improper date.

In such circumstances, we review only for plain error. *Morrow v. Greyhound Lines, Inc.*, 541 F.2d 713, 724 (8th Cir. 1976).

The contract bore the dates April 2, 1976 to December 31, 1976. There is evidence tending to show that Thummel and McKamey signed the contract on April 2, 1976. McKamey signed again on behalf of the trustees of the Welfare Fund on October 13, 1976. While the contract, of course, may not have become binding until it was approved by the Welfare Fund on October 13, it is not unreasonable to conclude that once such approval was obtained the period of contributions related back to and covered the entire contract period, April 2, 1976 to December 31, 1976. Thus, on the record before us we are unable to conclude that the result reached by the district court amounted to error, much less a plain miscarriage of justice justifying reversal. *Id.* at 724.

### 4. Attorneys' Fees.

Thummel argues that the district court did not consider all the facts before it ap-

proved the amount of attorneys' fees requested by the funds.

ERISA was amended in 1980 to require the award of reasonable attorneys' fees when a pension fund prevails in a suit against an employer to pay unpaid contributions. 29 U.S.C. § 1132(g)(2)(D); *Trust Fund Local 33 v. DiBernardo*, 664 F.2d 1344, 1346 (9th Cir.1982). Thummel argues that the district court did not apply the correct standard in determining what a "reasonable" fee was.

The district court considered the bill presented by the funds' attorneys for some $4,000.00. The bill showed that the funds' attorneys had worked 79 hours at the billed rate of $50.00 per hour. The bill itemized specific actions taken and work performed, but the time each job took was not specified. The district court considered that the bill was reasonable, in light of his own experience with the time required to decide the case, the quality of the work, and the extent of the recovery. Thummel contends that the district court should have considered the degree of bad faith on Thummel's part, Thummel's ability to pay the fee award, whether an award of fees would deter others from withholding contributions, and the relative merits of the parties' positions. *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1255 (5th Cir.1980).

First, *Iron Workers* was decided under § 1132(g) before it was amended in 1980. That version allowed attorneys' fees in ERISA cases in the district court's discretion. Section 1132(g) now provides that, in the circumstances of this case, an award of fees is mandatory. Most of the considerations urged upon us by Thummel have to do with whether fees should be awarded, not whether the amount of the fee is reasonable.

Just what is a reasonable attorneys' fee is a matter peculiarly within the district court's discretion. In this case, as in most, the district court had extensive contact with the parties and was thoroughly familiar with the issues and work required on the case. As long as the district court considers and gives appropriate weight to the factors relevant to the particular case, we will not reverse.

In this case, Thummel is unable to point to any factor which, had it been considered, would have mandated a different result. The important factors in this case were the funds' extensive recovery and the quality of the job done by the funds' attorneys. The hours worked were not excessive, and no wasted time can be discerned. While there are other legitimate factors which in some if not most cases ought to be considered by the district court in deciding what a reasonable fee is, *see Seymour*, 605 F.2d at 1117 (adopted in § 1132(g)(2)(D) cases, *Kemmis v. McGoldrick*, 706 F.2d 993, 998 (9th Cir.1983)), application of the factors varies from case to case. We see no abuse of discretion here.

The judgment of the district court is affirmed.

## ORDER

On motion for award of attorneys' fees and expenses and response thereto, it appearing that appellees are entitled to recover as fees at least the lawful and reasonable sum of $4,000.00 plus expenses in the amount of $696.47, it is ordered that appellees be, and hereby they are, awarded judgment against appellants for such fees and expenses in the amount of $4,696.47.