**UNITED STATES of America, Plaintiff,**

v.

**Keith E. KALLSTROM, Defendant.**

No. 05–20043–BC.

United States District Court, E.D. Michigan, Northern Division.

Aug. 30, 2006.

*OPINION AND ORDER GRANTING IN PART AND DENYING IN PART GOVERNMENT'S MOTION TO COMPEL HANDWRITING EXEMPLARS*

LAWSON, District Judge.

The government has filed a motion to compel the defendant to give samples of his handwriting so that these exemplars can be compared to certain letters the government has seized as evidence to determine if they were written by the defendant. The defendant has objected to the motion on the grounds that the method the government intends to use to extract the exemplars will cause him to incriminate himself in violation of the Fifth Amendment. The Court heard arguments from counsel for the parties in open court on June 19, 2006. The Court now finds that the government's proposed testing method—that is, requiring the defendant to write a statement dictated by a government agent—will constitute a testimonial act because it involves an intellectual exercise in which the defendant will be quizzed on how to spell the dictated words, and he will be expected to respond to that query with a written answer. Compelling the defendant to respond in that manner abridges his constitutional privilege against self-incrimination in a way that copying a sample text in his own hand does not. The Court, therefore, will permit the government to obtain handwriting samples from the defendant, but it will prohibit the government from demanding that the defendant write statements from dictation and require only that the exemplars be copied from written text.

James A. Brunson, U.S. Attorney's Office, Bay City, MI, for Plaintiff.

Anthony T. Chambers, Detroit, MI, for Defendant.

I.

The defendant is charged in a superseding indictment with possession of firearms (hand grenades) that were not registered

to him, in violation of 26 U.S.C. § 5861(d); transportation of destructive devices (hand grenades) in interstate commerce, in violation of 18 U.S.C. § 922(a)(4); and five counts of use of the mail or interstate commerce with the intent that a murder be committed, in violation of 18 U.S.C. § 1958. The government's theory is that the defendant traveled from Oklahoma to Michigan to locate and retrieve his estranged wife, and he brought the prohibited explosive devices with him in order to convince his wife to return with him. The defendant was arrested and taken into custody at a restaurant near a freeway exit after the police received a tip that the defendant had threatened to harm his wife. While in custody, the government believes, the defendant tried to hire another inmate, one William Aldred, to kill James Wickstrom, a prominent white supremacist and the defendant's wife's boyfriend. According to the government, the defendant and Aldred eventually entered into a written contract for the murder. After Aldred was moved to another facility, the defendant allegedly wrote a number of letters to him about the murder. Aldred eventually told the FBI about the defendant's statements and the contract.

The government now seeks the handwriting exemplars from the defendant to compare them to these writings. The contract and letters contain unique spellings of Wickstrom's name, the name of a local town, certain religious references, and other words. As noted above, the government wants to dictate words to the defendant and have him write them down, presumable to see how the defendant spells the words and punctuates his sentences. The defendant objects. He acknowledges his obligation to give samples of his handwriting. However, he contends that requiring him to come up with the spelling himself amounts in essence to an interrogation on his knowledge of spelling and grammar. Responding to that inquiry, either verbally or in writing, he insists, will violate the Fifth Amendment.

## II.

■ The Constitution does not prevent the government from requiring individuals to give handwriting exemplars as such as part of a criminal investigation. "Handwriting, like speech, is repeatedly shown to the public, and there is no more expectation of privacy in the physical characteristics of a person's script than there is in the tone of his voice." *United States v. Mara*, 410 U.S. 19, 21, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973). "The Fourth and Fifth Amendments protect certain kinds of private communications and property interests but do not protect identifying characteristics such as voice and handwriting evidence." *United States v. Waller*, 581 F.2d 585, 587 (6th Cir.1978) (citing *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966)).

In *United States v. Mara*, the Supreme Court held that a grand jury subpoena that compelled a witness to give handwriting exemplars to "be used solely as a standard of comparison," *Mara*, 410 U.S. at 22 n. *, 93 S.Ct. 774, to determine if the subject made other writings did not violate the Fourth Amendment. The Court noted, however, that "[i]f the Government should seek more than the physical characteristics of the witness' handwriting—if, for example, it should seek to obtain written answers to incriminating questions or a signature on an incriminating statement— then, of course, the witness could assert his Fifth Amendment privilege against compulsory self-incrimination." *Ibid.*

In *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), the Supreme Court rejected an argument that

the defendant's Fifth and Sixth Amendment rights were violated by the admission in evidence at a California robbery trial of handwriting exemplars given by a defendant during the investigation of a separate, unrelated robbery. The Court held:

> The taking of the exemplars did not violate petitioner's Fifth Amendment privilege against self-incrimination. The privilege reaches only compulsion of 'an accused's communications, whatever form they might take, and the compulsion of responses which are also communications, for example, compliance with a subpoena to produce one's papers,' and not 'compulsion which makes a suspect or accused the source of 'real or physical evidence.' *Schmerber v. State of California*, 384 U.S. 757, 763–764, 86 S.Ct. 1826, 16 L.Ed.2d 908. One's voice and handwriting are, of course, means of communication. It by no means follows, however, that every compulsion of an accused to use his voice or write compels a communication within the cover of the privilege. A mere handwriting exemplar, in contrast to the content of what is written, like the voice or body itself, is an identifying physical characteristic outside its protection.

*Gilbert*, 388 U.S. at 266–67, 87 S.Ct. 1951. The question of when providing handwriting samples transcends the mere display of physical characteristics and migrates into the territory of "communication" has not been addressed by the Sixth Circuit. Other circuits have reached conflicting results.

The Ninth Circuit has held that using the dictation method to obtain handwriting exemplars from a defendant did not violate the Fifth Amendment even though the purpose of utilizing "the somewhat unorthodox method of obtaining and utilizing exemplars of his handwriting" was to compare "a number of rather unusual spelling mistakes" in the exemplars with a note left by kidnappers. *United States v. Pheaster*, 544 F.2d 353, 371–72 (9th Cir.1976). The court reasoned that the forced revelation of the defendant's difficulty with spelling was not communication protected by the Fifth Amendment because both spelling and penmanship are "acquired by learning," and "[t]he manner of spelling a word is no less an 'identifying characteristic' than the manner of crossing a 't' or looping an 'o'." *Ibid.*

The First Circuit was critical of the *Pheaster* decision and declined to follow it in *United States v. Campbell*, 732 F.2d 1017 (1st Cir.1984). The court reasoned:

> The *Pheaster* court got off on the wrong foot. Basic penmanship, of course, is learned, but to say that the ultimate handwriting is an intellectual process of learning, as distinguished from physical form, is simply not so. The distinction is what caused the [*Gilbert*] Court ... to exempt compelled handwriting from the Fifth Amendment. We agree that spelling may be an identifying characteristic *no less* than handwriting idiosyncrasies. The trouble is, from the standpoint of the Fifth Amendment, that it may be something more. When he writes a dictated word, the writer is saying, "This is how I spell it,"—a testimonial message in addition to a physical display. If a defendant misspelled a common word, and the document sought to be attributed to him misspelled it the same way, could it be thought that the government would not, quite properly, *United States v. Russell*, 704 F.2d 86, 91 (3d Cir.1983), argue that there was a message? Indeed, the *Pheaster* court said exactly that, "The manner of spelling a word is ... an 'identifying characteristic,' " and then drew the wrong conclusion. Not surprisingly, the court cited no authority for its position.

This might be tested another way; could the defendant be put on the stand and given a spelling test? Obviously, compelled answers would be testimonial, or communicative. Yet that is precisely what the government proposed. At the same time, it did not deny that it had a probation file containing defendant's handwriting, both recent and old. We are not surprised that he suspected the government of wanting something other than handwriting.

*Campbell,* 732 F.2d at 1021.

Lower courts that have considered the issue have followed *Campbell* and rejected *Pheaster. See United States v. Matos,* 990 F.Supp. 141, 144 (E.D.N.Y.1998) (stating that "[r]equiring a person to provide an exemplar from dictation that does not provide the spelling of the dictated words is the functional equivalent of requiring the person to state how he spells the dictated words. The answer may well serve to identify the person as the perpetrator of a crime, but that does not render it an 'identifying characteristic' akin to fingerprints or blood type"); *United States v. Watkins,* 1996 WL 712665, *1–2 (D.Colo.) (finding "that producing an exemplar by dictation requires 'an operation of the mind,' and that an exemplar so produced is testimonial in nature and thus entitled to the protections of the Fifth Amendment. The production of an exemplar pursuant to oral dictation requires a defendant to demonstrate cognitive abilities").

■ Similarly, this Court believes that the reasoning of the *Campbell* court is more persuasive and consistent with Supreme Court precedent. Obtaining a handwriting sample by dictation allows the examiner to pose spelling questions to the subject, which are answered in the written exemplar. It also allows the examiner to assess the degree of the subject's sophistication, the level of his education, the scope of his vocabulary, and his educational level. In other words, the test "seek[s] more than the physical characteristics of the witness' handwriting," and therefore the subject may "assert his Fifth Amendment privilege against compulsory self-incrimination." *Mara,* 410 U.S. at 22 n. *, 93 S.Ct. 774. If the Court's task in such a situation is to separate the giving of a sample of a physical characteristic—like fingerprints, DNA, the sound of one's voice, or the form of one's handwriting—from compelled communication, as the *Gilbert* Court suggests that it is, then the Court must conclude that methods of testing for such trace evidence samples that also allow the examiner to probe the subject's intellect and learning are akin to requiring the subject to answer questions about himself and, possibly, incriminate himself as well. One's spelling acumen is different than the characteristics of one's handwriting. To convey the former, communication must take place, which, in a custodial setting and after an arraignment has taken place, cannot be compelled absent a valid waiver. *See Smith v. Illinois,* 469 U.S. 91, 95, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984) (quoting *Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)); *Massiah v. United States,* 377 U.S. 201, 204, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).

### III.

The Court concludes that the government's proposed method of obtaining handwriting exemplars from the defendant contravenes the Fifth Amendment right against self-incrimination. The government may obtain its handwriting samples, but not by a method that requires a testimonial act, as the proposed dictation method does here.

Accordingly, it is **ORDERED** that the government's motion to compel handwrit-

ing exemplars [dkt # 30] is **GRANTED IN PART AND DENIED IN PART.**

It is further **ORDERED** that the defendant shall provide samples of his handwriting to the government's representative by means of copying from a prepared text.

It is further **ORDERED** that the time period from the filing of the government's motion to this decision is excluded from the time within which the defendant must be brought to trial under the Speedy Trial Act because the novelty of this issue in this circuit necessitated additional time for study and review of the issue; the Court having determined that the ends of justice served by taking the time to decide this motion outweigh the interest of the government and the defendant in a speedy trial. See 18 U.S.C. § 3161(h)(1)(F), (J), (8)(B)(ii).

It is further **ORDERED** that the government's motion to determine excludable delay [dkt # 45] is **DENIED** as moot.