**In re Elmer Francis LAYDEN, Jr., a Witness before the Special February 1977 Grand Jury.**

**No. 77 GJ 378.**

United States District Court,
N. D. Illinois, E. D.

Jan. 13, 1978.

---

George J. Cotsirilos, Chicago, Ill., for witness.

J. Kenneth Lowrie, Sp. Atty., U. S. Dept. of Justice, Samuel K. Skinner, U. S. Atty., Northern District of Illinois, Chicago, Ill., for the U. S.

MEMORANDUM OPINION AND ORDER

PARSONS, Chief Judge.

An order to compel a witness to furnish handwriting exemplars in a convoluted

manner has been sought by the Government on behalf of the Special February 1977 Grand Jury; these exemplars are later to be compared with handwriting samples previously determined to have been disguised.

Three issues have been raised. First, to what extent does the Fifth Amendment afford protection against self-incrimination in such a context? Second, under the Fourth Amendment, is such a request reasonable? Third, is such an order enforceable?

## I.

The Government contends that to require a witness to submit convoluted handwriting exemplars as an aid to the Grand Jury in discovering any possible relationship between documents now in question and the witness is not offensive to the Fifth Amendment. The Government asserts that this is so even though no similarities have been found in the questioned documents and the witness' normal script. In relevant part, the Fifth Amendment provides that: ". . . no person shall be compelled to be a witness against himself," the critical word here being "compelled". The Amendment does not immunize self-incriminating statements unless they are, indeed, "compelled".

Any evidence that tends to show that the witness himself committed a crime is testimonial, *Counselman v. Hitchcock,* 142 U.S. 547, 562, 12 S.Ct. 195, 35 L.Ed. 1110 (1891) and, as such, the witness is protected from forced disclosure by the Fifth Amendment. However, as cases subsequent to *Counselman* demonstrate, there are certain limited exceptions where evidence testimonial in nature has been compelled without offending the Fifth Amendment. The theory upon which these exceptions rest is that they involve revelations of a physical characteristic, commonly available to the public and easily observable, which readily identify a witness or defendant. *U. S. v. Dionisio,* 410 U.S. 1, 5, 93 S.Ct. 764, 35 L.Ed.2d 67 (1972); *Gilbert v. California,* 388 U.S. 263, 266, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1966).

In *Dionisio,* Mr. Justice Stewart explained that physical characteristics are those with which a stranger easily comes into contact, *U. S. v. Mara,* 410 U.S. 19, 21, 93 S.Ct. 774, 35 L.Ed.2d 99 (1972), and which invoke reasonable expectation that others may see them. No reasonable person would be offended by disclosure of physical qualities which are readily discernible by the general public. Nor should a reasonable person expect that the protections of the Fourth and Fifth Amendments would permit him to refuse to display such characteristics either at a lineup or before a Grand Jury; and those persons who view a lineup and those citizens who participate in Grand Jury deliberations are members of the public-at-large. See *Dionisio, supra* at 10, 93 S.Ct. 764; citing *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1965).

It is important, however, that the evidence sought must relate to an identifying physical characteristic. Even though the evidence was actually testimonial in nature, *Dionisio, Gilbert, Schmerber* and *Mara* all employ the legal concept that there is no compulsion when what is ordered to be revealed or to be produced is merely what one ordinarily displays to the general public voluntarily or unconsciously. *Schmerber v. California, supra,* was the earliest in this line of cases; there, compulsion was absent as the witness was entirely unresistant. He was just "there," taking no active part in anything that would affect the outcome of tests performed upon his person. Hence, where affirmative participation is required of a person subjected to such an outcome-determinative test, compulsion violative of the Fifth Amendment might be present (in the absence of some exception.) *Schmerber, supra* at 764–5, 86 S.Ct. 1826.

In another handwriting exemplar case, the Supreme Court spoke about "mere" handwriting exemplars as involving no affirmative "acting-out" by the suspect. Giving (non-contrived) handwriting exemplars was equated with displaying mere physical characteristics. *Gilbert v. California, supra,* 388 U.S. at 266, 87 S.Ct. 1951. Decided the

same year was *U. S. v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, wherein the suspect was required to speak certain phrases while in the lineup. The Court held that there was no reasonable expectation of privacy nor any compulsion when one was required merely to demonstrate the natural sound of his voice; therefore, neither the First nor Fifth Amendments were violated. The lineup and voice identification were said to be merely for purposes of demonstrating readily-ascertainable, physical identification.

In the case before me, the Government asks that I go beyond these cases to require the witness here to display an unnatural [for him] physical characteristic. It is elementary that I would be compelling him to "act-out". It is true that under the aforementioned decisions, compulsion by requiring a witness to perform a natural "affirmative" act for purposes of comparison has been permitted under the Fifth Amendment. This ought not mean, however, that the Government may require that an abnormal handwriting sample must be given involuntarily; to do so would definitely constitute "compulsion" and would be offensive to the Fifth Amendment.

## II.

■ An objection based on the Fourth Amendment's search and seizure clause also has been raised to contest the Government's request to force compliance with an order for a contrived handwriting exemplar. *See, U. S. v. Doe,* 457 F.2d 895, 898 (1972) and *Dionisio, supra,* 410 U.S. at 10, 93 S.Ct. 764.

The witness asserts that by analogy *Schmerber, supra,* (a search and seizure case) sets forth the applicable standard to be applied in the instant case. Is an intrusion on the witness' Fourth Amendment right to be free of an unreasonable search and seizure justified under the particular facts of this individual case? Such an inquiry should ascertain: (1) whether the evidence sought is of a "natural" or physically-identifying characteristic; and (2) if so, whether under all the circumstances, it is mere chance that some evidence might prove useful for the Grand Jury's investigative purpose. *Schmerber, supra* at 764 and 768, 86 S.Ct. 1826; *Dionisio, supra* at 14, 93 S.Ct. 764. For the limited purposes here, I concur with the proffered test.

After a determination by the Government's expert that the witness' normal script bares no commonality to signatures appearing on documents here in question, the Government has sought an order to force the witness to write in such a convoluted manner that the writing might compare favorably to that found in the questioned documents. Such a contrived handwriting sample decidedly would not be "natural" for this witness. And the Government has not been able to demonstrate that there is anything more than a mere chance possibility that the contrived exemplar would match with the documents under investigation.

Such an order would force the witness into the anomalous position of implicating himself accidentally by faithfully trying to comply with the order. The relative roles of the handwriting and the questioned documents in the usual investigation are virtually inverted here. The capability of the witness to disguise is unknown probably even to him. Proof of his ability would not only be clearly testimonial and violative of the Fifth Amendment, but would also be an unreasonable invasion of the witness' Fourth Amendment right[s].

Is a handwriting sample really physical evidence, such that the public generally will expect, upon seeing it, that it belongs to some identified person? Is a voice exemplar something which the public really knows can be identified to a specific individual? That is, are either handwriting or voice samples so certain of identification that they may be justifiably equated with a person's physical qualities of height, weight, hair color, age, sex, and so forth? Probably not, although *Dionisio* and *Mara* decided otherwise. To conclude with absolute certainty that a contrived handwriting sample is or is not that of a particular person is virtually impossible. Yet "innocent until proven guilty" is still a standard that is

fundamental to our criminal justice system. Where there is no precise standard of measurement as to whether or not a witness has, in truth, complied with an order to produce, such a court order is inherently constitutionally offensive.

It is notable that the Government's position here exemplifies the danger in expanding the definitional limits of "physical", i. e., non-testimonial, evidence beyond the scope originally contemplated by the Supreme Court in *Counselman, supra,* at 563–64, 12 S.Ct. 194. In its broadest sense, *Counselman* held that a witness' physical characteristics are evidence which does not fall within the ambit of protection offered by the Fifth Amendment. At this time, the late 1970's, when society is especially concerned with protecting an individual's reasonable right to privacy, mechanical expansions of the standards of *Dionisio* or *Mara* seem to be inappropriate and not inspired by public necessity.

The Supreme Court has emphasized the overwhelming importance in our society of an independent Grand Jury. *Wood v. Georgia,* 370 U.S. 375, 390, 82 S.Ct. 1364, 8 L.Ed.2d 569 (1962). Mr. Justice Douglas' strong dissent in *Dionisio* laments the fact that the Grand Jury is no longer "a protective bulwark standing solidly between the ordinary citizen and an overzealous prosecutor." *Id.* 410 U.S. at 17, 93 S.Ct. at 773. In order to insure its credibility and to maintain its proper investigatory function, a Grand Jury must remain impartial and free from the appearance of being disinterested in fundamental constitutional principles.

There here is a "Catch 22" operating. The more "successfully" the witness tries to imitate the questioned handwriting, the more likely he is to implicate himself; and the less "successful" his attempts proved to be the more he exposes himself to the charge that he is intentionally disobeying the court's order. He is presented with a true Hobson's choice. Exposure of a witness to such uncertainty in the force of law is unequitable, unreasonable, and offensive to basic concepts of fundamental fairness.

III.

A final question raised by the Government's request is whether such an order is enforceable once entered.

Compliance with any order to produce could be certain, in the Government's view, only if incriminating evidence were obtained. If the writings failed to match, a charge of willful failure to comply with the order might emerge. It would appear almost impossible to later determine what, in fact, was the truth.

Furthermore, it is axiomatic that a prerequisite to the entry of a decree is that it must be one which is capable of practical administration. As a court will not direct the doing of a useless thing, so it will not enter an order that it cannot enforce.

If it appeared likely that several decrees might eventually be necessary to effect compliance with an order to produce exemplars, etc., then the original order should never have been granted. A court must examine the nature of a requested action and, as a matter of judgment, determine if a decree under the circumstances will prove useless; if so, it should deny the request. *Virginian Ry. v. Federation,* 300 U.S. 515, 551, 57 S.Ct. 592, 81 L.Ed. 789 (1936); *Standard Fashions v. Siegel Cooper Company,* 157 N.Y. 60, 51 N.E. 408, 410 (1898).

Where, as here, the use of a judicial directive cannot reasonably be calculated to achieve the desired purpose, the court should decline to act. *Chicago & N. W. R. R. v. Transportation Union,* 402 U.S. 570, 579, 91 S.Ct. 1731, 29 L.Ed.2d 187 (1970).

WHEREFORE, for the foregoing reasons, the Government's motion to compel the completion of convoluted handwriting samples by one Elmer Francis Layden, Jr., is denied.