In the Matter of the SPECIAL FEDERAL GRAND JURY EMPANELLED OCTOBER 31, 1985.

Appeal of John DOE, Appellant.

No. 86–5883.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Jan. 8, 1987.

Decided Jan. 23, 1987.

Rehearing and Rehearing En Banc Denied Feb. 24, 1987.

Robert J. Costello, Phelan & Costello, P.C., New York City, Paul Shechtmann, Philadelphia, Pa., for appellant.

Maria E. Beardell, Sp. Atty. Newark Strike Force, Roger Bernstein, U.S. Atty's. Office, Newark, N.J., for appellee.

Before SEITZ, BECKER and MANSMANN, Circuit Judges.

## OPINION OF THE COURT

MANSMANN, Circuit Judge.

In this appeal from an order of civil contempt, we hold that a grand jury witness is not forced to become "a witness against himself" within the meaning of the Fifth Amendment if compelled to provide "normal" handwriting exemplars with a "backward slant" when backhand is concededly not his normal writing style. The district court's jurisdiction was founded on 28 U.S.C. § 1826(a); our jurisdiction is founded on 28 U.S.C. § 1291. Our review is plenary and we affirm the order of the district court.

## I.

A federal grand jury in Newark, New Jersey has been investigating possible violations of federal laws involving labor racketeering (29 U.S.C. § 186), mail fraud (18 U.S.C. § 1341) and extortion (18 U.S.C.

§ 1951). The investigation revealed the existence of handwritten documents which were deemed relevant to the investigation. The identification of the author of those documents was found to be essential to the investigation.

On July 31, 1986, pursuant to the grand jury's subpoena, the witness provided handwriting exemplars to the Federal Bureau of Investigation's Document Laboratory. These samples were to be compared with the handwritten documents in order to determine the authorship of the documents. The FBI Document Examiner concluded that the witness was the author of certain of the documents and requested additional exemplars to assist in determining the authorship of other documents. A second grand jury subpoena issued on September 19, 1986, directed the witness to furnish handwriting exemplars "in the amount, style, and wording as directed."

Thereafter, on November 5, 1986, the witness appeared at FBI offices and was directed to furnish samples of his handwriting in a backhand slant. The witness refused to do so, claiming that such samples were testimonial in nature, and therefore violative of his Fifth Amendment privilege against self-incrimination. On December 1, 1986 the district court granted the government's motion for an order compelling the witness to provide the exemplars.

The witness refused to comply with the December 1st court order and the government moved for a judgment of civil contempt pursuant to 28 U.S.C. § 1826(a). Thereafter, on December 10, 1986, the district court found that the witness had refused to comply with the December 1, 1986 order without just cause and adjudged him in contempt. This appeal followed.

## II.

The witness argues that the compulsion of a backward-slanting handwriting sample forces him to provide evidence of a testimonial or communicative nature in violation of the privilege not to testify against oneself. He contends that a handwriting sample in

his "normal" backward slant is, in effect, evidence that would communicate the angle he would normally use if he were to disguise his writing by using a backward slant. As such, it is evidence of information the witness possesses. The witness contends that the government may compel evidence about a defendant's body, but not his intellectual processes. The witness also contends that while a defendant may be forced to reveal physical identifying characteristics, this request does not serve that purpose. Rather this request is for information regarding how he slants his writing when trying to disguise his normal style and is, therefore, an impermissible request.

The government argues that the Fifth Amendment's privilege against self-incrimination does not preclude the compulsion of real or physical evidence, as that evidence does not disclose any knowledge or information a defendant might have. The privilege protects thought processes, not non-communicative acts. Handwriting examples, it is contended, are identifying physical characteristics outside the scope of the Fifth Amendment.

The government maintains that a handwriting sample in a backward slant is merely a manipulation of a physical ability. It is not a revelation of a thought process, or other protected information, and is not testimonial in nature. Therefore, it is argued, compulsion of the writing sample is permissible.

### III.

In reaching our decision we must be guided by the Supreme Court's construction of the Bill of Rights' safeguard that no person "shall be compelled in any criminal case to be a witness against himself." In *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the Court held that "the privilege protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature." 384 U.S. at 761, 86 S.Ct. at 1830. The words "testimonial" and "communicative" are "not models of clarity

and precision." *Id.* at 774, 86 S.Ct. at 1837 (Black, J., dissenting). The distinction between compelling a witness to be a source of "communications" or "testimony" and compulsion to be the source of "real or physical evidence" was recognized by the *Schmerber* Court as a "helpful framework for analysis." *Id.* at 764, 86 S.Ct. at 1832. The Court recognized, however, that "[t]here will be many cases in which such a distinction is not readily drawn." *Id.*

In *Schmerber* the Court applied the distinction in upholding the enforced withdrawal of a suspect's blood and the admission into evidence, in a prosecution for the criminal offense of driving while intoxicated, of a chemical analysis of the blood indicating intoxication. With respect to the compelled extraction, the Court found that the suspect's "testimonial capacities were in no way implicated" and that "his participation except as a donor, was irrelevant to the results of the test...." *Id.* at 765, 86 S.Ct. at 1832. The Court found the evidence admissible, although a product of compulsion, because it was "neither petitioner's testimony nor evidence relating to some communicative act or writing by the petitioner." *Id.*

Despite the fact that one's testimonial or communicative capacities are at least implicated by compulsion to use one's voice or handwriting, the Supreme Court has held that "[a] mere handwriting exemplar, in contrast to the content of what is written, like the voice or body itself, is an identifying physical characteristic" and is therefore real or physical evidence outside the protection of the Fifth Amendment privilege. *Gilbert v. California,* 388 U.S. 263, 266–67, 87 S.Ct. 1951, 1953, 18 L.Ed.2d 1178 (1967).

The *Schmerber* Court, however, recognized in dicta that "some tests seemingly directed to obtain 'physical evidence' ... may actually be directed to eliciting responses which are essentially testimonial" thereby evoking "the spirit and history of the Fifth Amendment." 384 U.S. at 764–65, 86 S.Ct. at 1832. The example given by the *Schmerber* Court was a lie detector

test. In essence, the witness before us argues that the compulsion to provide not "a mere handwriting exemplar" *a la Gilbert*, 388 U.S. at 266–67, 87 S.Ct. at 1953, but a "normal" handwriting exemplar designated to be written in a backward slant which is not normal to this witness is such a test.

The witness stipulates that he is willing to provide "normal handwriting in the amount, style, and wording as directed" in compliance with the subpoena. He does not argue that as a general matter an order to provide a handwriting sample with a backward slant violates the Fifth Amendment. His contention on appeal is that because a backhand slant is concededly not his normal writing style, the government's direction to provide such a sample, in combination with the subpoena's requirement to provide "normal" handwriting, amounts to compulsion to *choose* a "normal" backhand. As we understand the argument, it is that compulsion to affect a "normal" style which is concededly not his customary style is tantamount to compelling an admission that it is normal for him to disguise his writing in the demonstrated manner.

In *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), the Supreme Court acknowledged that the act of producing physical evidence in response to a subpoena has communicative aspects of its own. 425 U.S. at 410, 96 S.Ct. at 1580. A tacit admission inherent in the act of producing evidence in response to a subpoena may be within the protection of the Fifth Amendment if it is both testimonial *and* incriminating. *Id.* at 391, 96 S.Ct. at 1569. Whether such an averment is both testimonial and incriminating depends on the facts and circumstances of each case. *Id.* at 410, 96 S.Ct. at 1580.

When an accused is required to submit a handwriting exemplar he admits his ability to write and impliedly asserts that the exemplar is his writing. *Id.* at 411, 96 S.Ct. at 1581. Although the exemplar may be incriminating to the witness and although he is compelled to furnish it, his Fifth Amendment privilege is not violated be-

cause furnishing a handwriting sample is not testimony. *Id.* at 411, 96 S.Ct. at 1581; *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).

The appellant argues, however, that under the facts and circumstances of this case, an additional tacit admission was inherent in the act of providing the sample. That admission was that the witness would choose to slant his handwriting at a certain angle when disguising it. He further argues that such an admission is testimonial for purposes of Fifth Amendment protection.

■ First, we disagree that such an admission would result from provision of a backhand sample in compliance with the direction in the subpoena. The appellant attaches unwarranted significance to the use of the word "normal" in the subpoena. In the context of the full order to provide "normal handwriting in the amount, style and wording as directed" the meaning of the word "normal" could only be that the sample should be uncontrived except insofar as directed.

■ Second, assuming that the claimed admission regarding disguised handwriting is inherent in compliance with the court order, acts involved in the production of physical evidence are not "testimonial" merely because they are communicative. *Fisher*, 425 U.S. at 411, 96 S.Ct. at 1581. The relevant inquiry must be whether the witness is required "to use his [handwriting] as an identifying physical characteristic" or "to speak his guilt." *United States v. Wade*, 388 U.S. 218, 222–23, 87 S.Ct. 1926, 1930, 18 L.Ed.2d 1149 (1967). Acts involved in the production of evidence are not testimonial merely because they give rise to a series of inferences which may lead to identifying a witness as the perpetrator of a crime. *See California v. Byers*, 402 U.S. 424, 91 S.Ct. 1535, 29 L.Ed.2d 9 (1971); *United States v. Wade*, 388 U.S. 218, 222–23, 87 S.Ct. 1926, 1930, 18 L.Ed.2d 1149 (1967).

That the witness' name may be linked with backhand writing could not by itself

implicate the witness in criminal conduct. Surely it is not illegal to disguise one's handwriting with a backward slant. The potential for incrimination would be that based on analysis of the *physical characteristics* of the handwriting exemplar the witness could be identified as the author of the relevant documents. This potential exists to the same degree whether the sample is backhand or forehand. Thus, the minimal thought process involved in slanting one's handwriting is of no significance in transforming physical evidence into testimony.

Authorities dealing directly with compulsion of disguised handwriting are scant. The district court relied on two cases in ordering the witness to provide the sample as instructed. *United States v. Richardson*, 755 F.2d 685 (8th Cir.1985) (*per curiam*), is the only authority directly on point. There the Court of Appeals for the Eighth Circuit held that a defendant's Fifth Amendment privilege was not violated when she was compelled to provide exemplars in a backward slant, unlike her natural handwriting. Because the court relied on the unpublished district court opinion, we are not privy to the reasoning of the court of appeals with regard to the constitutional issues.

The district court also cited our court's opinion in *United States v. Clifford*, 704 F.2d 86 (3d Cir.1983), for the proposition that the grand jury may compel handwriting exemplars in block style. However, in *Clifford* there was no challenge to the compulsion of the block style exemplars for comparison with certain threatening letters printed in block style. The issue in *Clifford* was the admissibility of cursive exemplars to prove that the defendant had written other cursive correspondence bearing similarities to the threatening letter in spelling, abbreviation, syntax and paragraph structure.

The appellant misplaces his reliance on the reasoning of *In re Layden*, 446 F.Supp. 53 (N.D.Ill.1978). The district court in *Layden* held that compulsion of uncharacteristic "convoluted" handwriting samples violates the Fifth Amendment privilege. In *Layden*, however, the court reasoned from the false premise that the Supreme Court cases dealing with display of physical characteristics hold that there is no "compulsion" of a witness only when he is required to reveal or to produce "what one ordinarily displays to the general public voluntarily or unconsciously" or when a witness takes "no active part in anything that would affect the outcome of tests performed upon his person." 446 F.Supp. at 55.

■ We find nothing in the cases to support this conclusion. The Supreme Court adheres to the view that "the Fifth Amendment protects against 'compelled self-incrimination, not [the disclosure of] private information.'" *Fisher*, 425 U.S. at 401, 96 S.Ct. at 1576, *quoting United States v. Nobles*, 422 U.S. 225, 233 n. 7, 95 S.Ct. 2160, 2167 n. 7, 45 L.Ed.2d 141 (1975). As we discussed earlier, Supreme Court precedents hold that there is no "testimony" when what is required is physical identification evidence. Without compulsion to provide testimonial evidence, one is not forced to become a witness against oneself. The mere fact that a style of writing is one which a witness would *not normally display* does not transform the sample from physical to testimonial evidence.

To avoid a contempt citation for failure to comply with a Grand Jury subpoena on the basis of the Fifth Amendment privilege, a witness must show that the subpoena would compel a testimonial communication that is incriminating. *Fisher*, 425 U.S. at 408, 95 S.Ct. at 1579. The witness has failed to make such a showing here.

### IV.

If we were writing on a clean slate here our result might be different. However, the distinction between physical and testimonial evidence is well established in Fifth Amendment jurisprudence, and we find nothing in the compulsion of an uncharacteristic sample which would transform

handwriting from physical to testimonial evidence.

We find that neither the act of producing a backhand exemplar nor the exemplar itself is testimonial evidence. Therefore we will affirm the order of the district court.

BECKER, Circuit Judge, dissenting.

The government concedes in this case that, while it may compel an accused to reveal identifying physical characteristics, it may not force him to "disclose any knowledge he might have," *United States v. Wade*, 388 U.S. 218, 222, 87 S.Ct. 1926, 1930, 18 L.Ed.2d 1149 (1967); to reveal his "consciousness of the facts [or] the operations of his mind in expressing it," *Rigney v. Hendrick*, 355 F.2d 710, 713 (3d Cir.1965) *cert. denied*, 384 U.S. 975, 86 S.Ct. 1868, 16 L.Ed.2d 685 (1966) *quoting* 8 Wigmore, *Evidence* § 2265 at 375 (3d ed. 1940); or otherwise to "reveal mental processes." Brief for Appellee at 7. In my view, however, the subpoena which the government seeks to enforce in this case compels the defendant to reveal his thoughts. It therefore should not be enforced.

The government in its brief invites us to distinguish between the witness's thoughts themselves—a desire for which the government disclaims—and the product of that thought. The government contends that only the former is protected and that even if backward slanted handwriting takes thought to produce, only the results of that thought will be disclosed by the handwriting sample the government seeks. Neither the majority nor I, however, accepts this distinction. The Supreme Court has instructed us that acts and other conduct aside from speech itself may be protected by the Fifth Amendment when they take the form of testimony, i.e., when they communicate the witness's thoughts. For instance, when the mere existence of a given document, or a witness's possession of it, is unknown and potentially incriminating, a subpoena demanding the document's production violates the witness's Fifth Amendment right. *United States v. Doe*, 465 U.S. 605, 612–13, 104 S.Ct. 1237, 1242, 79 L.Ed.2d 552 (1984); *Fisher v. United States*, 425 U.S. 391, 410, 96 S.Ct. 1569, 1580, 48 L.Ed.2d 39 (1976). Similarly, forcing a witness to take dictation compels him to communicate his thoughts about how to spell. *United States v. Campbell*, 732 F.2d 1017, 1021–22 (1st Cir.1984). As demonstrated by these decisions, the Fifth Amendment does not distinguish between the compelled disclosure of a thought itself and conduct which reveals the thought. So here, compelling a witness to write with a backward slant compels him to communicate to the government his thoughts about how to write with an abnormal backward slant.

The government correctly observes that it may compel a defendant to reveal his normal handwriting, which the Supreme Court has held is an "identifying physical characteristic." *Gilbert v. California*, 388 U.S. 263, 267, 87 S.Ct. 1951, 1953, 18 L.Ed.2d 1178 (1967). But normal handwriting is not a part of the body. If it is a physical—as opposed to a mental—characteristic, it is so because we write as we do by habit, without thinking about it. *See* 8 Wigmore on Evidence § 2265 at 316 (McNaughton Rev. ed. 1961) (handwriting is an "involuntary muscular habit pattern"); Inbau, *Self-Incrimination: What An Accused Person Can Be Compelled To Do* 46–47 (1950) ("[s]pecimen of handwriting ... [reveals] physical, habit-formed peculiarities"). Because we do not think about handwriting when we produce it, it does not reveal our thoughts. As the First Circuit observed per Judge Aldrich in *United States v. Campbell*, 732 F.2d at 1022, handwriting is "demandable" only because it reveals "pure physical habit or characteristics" as distinguished from "intellectual process." "Basic penmanship, of course, is learned, but to say that the ultimate handwriting is an intellectual process of learning, as distinguished from physical form is simply not so." *Id.* at 1021.

In my view, the alteration of one's normal handwriting style—as opposed to its replication—cannot be accomplished without thinking about it, and what one thinks

when one alters one's handwriting is revealed in the sample one produces. The government's affidavit in support of the enforcement of the instant subpoena makes this clear. The government attorney explains in that affidavit, Supplemental Appendix of Appellee at 3, that the handwriting the government seeks to identify was "prepared slowly and *deliberately* and in a backward slant." *Id.* (emphasis added) By compelling the witness to reproduce this handwriting, the government is forcing the witness to reproduce and reveal the deliberations which—if the defendant is guilty—went into his production of the samples the government is seeking to identify.

That the same view of backward slanted handwriting is an intellectual, as distinguished from a habitual or physical effort, is also suggested by the uncontradicted affidavit submitted on behalf of the witness by Charles Hamilton, a noted handwriting expert.[1] Hamilton characterizes slanted handwriting as a "deliberate aberration[ ]." Appendix 91. One matter one would have to deliberate about, I note, is how to put a backward slant on bilaterally symmetric letters—such as lower case l's and capital and lower case O's.[2] The handwriting sample that is the fruit of that thought is hardly habit. Backslanted writing is therefore not purely a physical characteristic, and the Fifth Amendment therefore precludes the government from compelling the witness to produce it.[3]

I do not contend that writing with an abnormal backward slant deprives the writing of all the "habits" or "mechanical elements" present in a person's normal handwriting. Hamilton's affidavit explains:

> [T]he loops on the l's and k's and d's on the f's and g's remain essentially the same; the dots over the i's do not change position with regard to the i stem; the distance between letters, words and lines is almost identical. In fact, the original rhythm of the script remains unchanged. It is merely the slant that is altered....

Appendix 90–91. The fact that the mechanical elements in the backward slant remain the same as in the normal handwriting, however, reveals that the difference between the two samples is the product of conscious thought. While the government is entitled to the habitual part, the government already has that from the normal handwriting sample. The government now seeks only the result of the thought component.

Furthermore, Hamilton's affidavit suggests that the evidence which the government seeks here is unnecessary. Because the mechanical portions remain the same, Hamilton explains, "it is my opinion that a skilled handwriting analyst has no need of any specifically fabricated backslanted exemplars to compare with a suspect script." Appendix 91. If the government desires the backslanted exemplar because it pro-

---

**1.** Although the report of the FBI handwriting examiner may be read to assert the need for the evidence sought here, *see* Supplemental Appendix at 9, his statement is conclusory. No reasoned explanation or rebuttal of Hamilton's affidavit is contained in the FBI examiner's statement or has been offered in any other part of the record.

**2.** A bilaterally symmetric letter is one whose left and right halves are mirror images of each another.

**3.** The witness has also characterized the subpoena as compelling him to reveal his "normal" backward slant, so that it forces him to tell the grand or petit jury whether he indeed has a "normal" backward slant. The majority has rejected this attack not because the government

may force the witness to disclose whether he has a "normal" backward slant but simply because the majority does not believe that the subpoena demands that the witness use his "normal"—or any other particular—backward slant. I agree with the majority that the subpoena does not seek information about the witness's "normal" backward slant. I add, however, that if the majority is wrong about what the subpoena requests, and if the government did seek information about that witness's normal backward slant, enforcement of that demand would unquestionably violate the Fifth Amendment. The government clearly could not put the witness on the stand and ask him whether he has a "normal" backward slant. If the witness is correct about what the subpoena seeks, then it has the same effect as asking the witness that question.

vides additional probative evidence in that it communicates the witness's thoughts, that desire is thwarted by the Fifth Amendment, as we have noted. Alternatively, the government may desire a backslanted sample to show the grand or petit jury a superficial and prejudicial similarity between evidence in the record and the witness's handwriting. Even assuming that the government may use the evidence in this way, the government's need to do so hardly presents a compelling reason to expand the government's privilege to coerce handwriting evidence.

I acknowledge that this is not a clear case, and that the majority's opinion is not without force. The business of judging is line drawing, and in this context it is not clear just where the line should be drawn. But I am satisfied, for the reasons I have set forth, that the order in question crosses the line drawn by the Fifth Amendment and requires a defendant to communicate to the government, hence to incriminate himself. I respectfully dissent.[4]

**4.** I do not believe that I have engaged in factfinding in declaring that the act of writing with a backward slant (when one normally does not do so) involves thought. If, however, more careful factfinding is necessary, I would remand for evidence on that point.