**UNITED STATES of America ex rel. Willie DUNMORE, Petitioner,**

v.

**Aletha CAMP, Respondent.**

No. 88 C 3880.

United States District Court, N.D. Illinois, E.D.

Oct. 26, 1988.

there was no evidence of abnormalities that could cause severe pain, not that there was

Sam Adam, Chicago, Ill., for petitioner.

Arleen C. Anderson, Asst. Atty. Gen., Chicago, Ill., for respondent.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Willie Dunmore ("Dunmore") has filed a petition for writ of habeas corpus (the "Petition") under 28 U.S.C. § 2254 ("Section 2254") against his custodial Warden Aletha Camp ("Camp"). Camp has filed an Answer to the Petition, and both sides have filed briefs in support of their positions. For the reasons stated in this memorandum opinion and order, the Petition is denied in accordance with Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts ("Section 2254 Rule 8(b)").

evidence of abnormalities that could cause pain but they did not cause pain.

## Procedural Background

After a jury trial in the Circuit Court of Cook County, Dunmore was found guilty of theft and conspiracy on July 2, 1985, then sentenced to a seven-year prison term and ordered to pay $12,500 in restitution. On direct appeal he unsuccessfully asserted (see *People v. Dunmore* (1st Dist.1987) [162 Ill.App.3d 1164, 124 Ill.Dec. 222, 528 N.E.2d 1113 (table)]):

1. the trial court had improperly admitted:

(a) evidence of his voice exemplars and

(b) a lay witness' opinion as to voice identification;

2. he had not been proved guilty beyond a reasonable doubt; and

3. his constitutional rights had been violated at the time of his arrest.

Dunmore requested leave to appeal to the Illinois Supreme Court, which denied such leave on February 3, 1988. Dunmore then filed his original Petition in this District Court.

## Dunmore's Claims

Dunmore's Petition advances two grounds for relief:

1. Admission at trial of tape recordings of Dunmore's voice exemplars violated his Fifth Amendment right against self-incrimination.[1]

2. Allowing the State's Attorney's investigator to identify Dunmore's voice as that of the person committing the crime, based on an extended conversation between the investigator and Dunmore in his attorney's absence, violated his Fifth and Sixth Amendment rights.

Examination of both claims requires a brief account of the circumstances under which the conversation took place and the exemplars were later obtained.

Dunmore was convicted of involvement in a "pigeon drop" scam. Although the victim never met Dunmore in person, she had many conversations on the phone with a man called "George Kramer." Pursuant to a court order, several of those conversations were monitored and taped by an investigator. On the strength of the investigation a warrant was issued for Dunmore's arrest.

Before he was taken into custody, Dunmore (with no attorney present) had a 15-minute non-interrogational conversation with the investigator. Based on that conversation, the investigator identified Dunmore's voice as that of George Kramer.

Some days later the investigator obtained the voice exemplars of Dunmore in this fashion:

1. After the investigator listened to the tapes of the recorded conversations with George Kramer, he repeated them using the same tone, words and inflection.

2. Dunmore was then asked to imitate the investigator while speaking into a telephone, and his voice was taped on another telephone.

This opinion first turns to the claim stemming from that procedure, then to the earlier conversation.

## Self-Incrimination

Dunmore first contends he was forced to incriminate himself in violation of his Fifth Amendment rights by being required to speak in an unnatural voice. Although his voice exemplars were never submitted to voice print analysis,[2] they were admitted into evidence at trial.

---

1. As always, this opinion adheres to the conventional and convenient (though technically imprecise) practice of referring to the underlying Bill of Rights provisions (which of course impose limitations only on the federal government) rather than to the Fourteenth Amendment (which applies to state actors and has been construed to embody the Bill of Rights guaranties).

2. On appeal (slip op. at 4) the Illinois Appellate Court found the exemplars were not submitted for analysis because Dunmore refused to use his *natural* voice during the sampling procedure. That finding is accepted as correct (see 28 U.S.C. § 2254(d) and *Sumner v. Mata,* 449 U.S. 539, 545–47, 101 S.Ct. 764, 768–69, 66 L.Ed.2d 722 (1981)), but it also does not derogate from the premise—accepted by both litigants—that Dunmore also objected to using his *unnatural* voice.

For present purposes, the Fifth Amendment analysis begins with the rule that only compelled "communication" or "testimony," and not real or physical evidence, is privileged (*United States v. Dionisio*, 410 U.S. 1, 6, 93 S.Ct. 764, 767, 35 L.Ed.2d 67 (1973)). That means Fifth Amendment protection does not extend to compulsion "to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture" (*id.*, citing *Schmerber v. California*, 384 U.S. 757, 764, 86 S.Ct. 1826, 1832, 16 L.Ed.2d 908 (1966)).

■ Nothing in that catalogue requires that the compelled actions—none of which violates the privilege against self-incrimination—must be natural. Under the teaching of *Dionisio* Dunmore could be called on to speak in a certain way, whether or not it is a "natural" manner for him, without violating his Fifth Amendment rights. And the resulting exemplars, when used to compare his voice to that of "George Kramer," were no more testimonial than a blood sample or a fingerprint.

*In re Special Federal Grand Jury*, 809 F.2d 1023 (3d Cir.1987) has recently reconfirmed that line of analysis in a closely related context. There a witness was subpoenaed to provide both normal handwriting samples and special backslanted samples. *Grand Jury, id.* at 1026 rejected the claim that such contrived samples constituted a testimonial admission that the witness had actually disguised his handwriting previously, noting it was clear the witness was merely complying with directions. As the court put it (*id.*):

> Acts involved in the production of evidence are not testimonial merely because they give rise to a series of inferences which may lead to identifying a witness as the perpetrator of a crime.

Here too the evidence of Dunmore's voice exemplars was admitted along with testimony as to how it was prepared. Here too there was no indication that the jury was misled as to how the exemplars were taken. And here too the fact that the exemplars, when compared with the taped conversations, led to inferences that Dun-

more and "George Kramer" were one and the same does not render them testimonial. To the extent that *In re Layden*, 446 F.Supp. 53 (N.D.Ill.1978) may be viewed as holding otherwise, this Court declines to follow its lead.

### *Absence of Counsel*

This Court finds it unnecessary to reach Dunmore's claim that obtaining the voice identification evidence in the absence of his attorney violated his Fifth and Sixth Amendment rights. Camp correctly contends that ground for relief was waived by Dunmore's failure to raise it in a timely fashion.

■ That claim was raised for the first time in Dunmore's pro se appellate reply brief. Failure to argue an issue in an opening brief constitutes waiver under Illinois Supreme Court Rule 341(e)(7), Ill.Rev. Stat. ch. 110A, ¶ 341(e)(7) ("Rule 341(e)(7)"):

> Points not argued [in appellant's brief] are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing.

Read literally, Rule 341(e)(7) compels the conclusion that Dunmore has waived this claim. Earlier this year this Court has held such a literal reading comports with both the purposes of the Rule and the Illinois cases applying it (*United States ex rel. Garner v. McEvers*, 690 F.Supp. 635, 637–38 (N.D.Ill.1988)).

In this instance, however, a bit more analysis is required. It is necessary to consider the effect of a portion of the opinion of the Illinois Appellate Court on direct review of Dunmore's conviction (slip op. at 5–6):

> Finally, even if we were to assume for the sake of argument that the defendant has not waived this issue by failing to specifically raise it earlier than in his pro se appellate reply brief, we find no support in the record for his belated and imprecise assertions that his constitutional rights were violated at the time of arrest.

That one sentence was the totality of the Appellate Court's treatment of what is now the second issue raised in the Petition.

In this proceeding Dunmore first asserts the appellate opinion reflects a determination that he has not waived his rights. But that reading cannot be reconciled with the plain language of the Appellate Court, which (1) clearly found Dunmore did not raise the issue earlier than his own reply brief and (2) specifically adverted to the waiver consequence of such a late submission (obviously a result attributable to Rule 341(e)(7)). There is no predicate for taking the court's statement at anything other than its face value—that no more than an arguendo assumption of nonwaiver was then made in order to add an expression as to the substantive poverty of Dunmore's claim.

That arguendo assumption does raise a second issue: whether the Appellate Court rejected the claim on the merits or on waiver grounds. On that score *Farmer v. Prast,* 721 F.2d 602, 605 (7th Cir.1983) (citation and footnote omitted) provides a definitive answer:

> Federal habeas corpus is precluded when, as here, the state appellate court affirms a trial court decision on the twin grounds of lack of merit in the constitutional claim and of appellant's failure, without justification, to comply with a state procedural rule.

Here the Appellate Court gave Dunmore's claim short shrift indeed, and its reference to the merits was expressly put in subjunctive terms ("even *if we were to assume* for the sake of argument...."). That is the classic hallmark of dictum rather than holding—and if (for the sake of argument!) it were instead considered as a holding, that reading would not be justified without *also* viewing the procedural waiver as a holding too.[3] Hence *Farmer* is brought into play by the very process of elevating the dictum on the merits to a decision on those grounds.

Dunmore seeks to invoke *Williams v. Lane,* 826 F.2d 654 (7th Cir.1987) as contrary authority. But *Williams* provides him no comfort, for it expressly recognizes that a state court's rejection of a constitutional claim due to procedural default bars habeas review *if* state law furnishes an independent and adequate procedural ground for the court's ruling (*id.* at 659). And *Farmer* is equally explicit in its holding that a twin ruling such as that presented by this case *is* an independent and adequate state ground (721 F.2d at 605–06). It follows that *Williams* does not stave off Dunmore's defeat on waiver grounds.

### Conclusion

Dunmore's first claim is rejected on the merits. His second claim has been waived, obviating any need to address its merits. No evidentiary hearing on Dunmore's petition is required, and it is dismissed with prejudice in accordance with Section 2254 Rule 8(a).

---

3. Even though any effort to engage in an extended analysis of the Appellate Court's single sentence has some aspects of the divination of entrails, it is also worth noting that court's characterization of Dunmore's effort as "belated and imprecise"—again strongly indicative of a holding of waiver.