UNITED STATES of America

v.

Garry R. BENISH.

Crim. No. 91–182.

United States District Court,
W.D. Pennsylvania.

Jan. 13, 1992.

Carolyn J. Bloch, Asst. U.S. Atty., for U.S.

James A. Ashton, Pittsburgh, Pa., for Garry R. Benish.

## MEMORANDUM OPINION

ZIEGLER, District Judge.

Judge Edward Becker has noted that "[t]he business of judging is line drawing, and in this context it is not clear just where the line should be drawn." *Matter of Special Federal Grand Jury*, 809 F.2d 1023, 1030 (3d Cir.1987). In this case, we are called upon to draw the line between where the curtilage ends and the open fields be-

gin. If we were writing on a clean slate, we would draw that line on behalf of the citizen and conclude that the warrantless search and seizure of a marijuana plant on private property by a member of the Pennsylvania Army National Guard requires suppression of the evidence. However, we are required to apply the rules of law promulgated by the highest court of this Republic regardless of our personal views.[1] The motion of defendant, Garry Benish, to suppress the evidence seized on July 1, 1991, at his farm in Armstrong County, Pennsylvania, will be denied.

The Pennsylvania State Police received information from an employee of an electric utility company concerning the abnormal consumption of electricity at a farm near Kittanning, Pennsylvania. Trooper, Jeffrey Rood, disguised as an employee of the utility company, went to the farm to investigate what he suspected was a methamphetamine laboratory. No one was home but the trooper observed that the windows on the basement and first floors of the residence were covered. He then concluded that the owner was growing marijuana. The state police obtained a copy of the deed and learned that Garry Benish was the owner of the farm consisting of approximately 10 acres.

A squad of Pennsylvania Army National Guardsmen were ordered to active duty to conduct surveillance under the command of Lieutenant Ross Gammon. Lt. Gammon set up a command post in a nearby church and the squad of Guardsmen in military fatigues took up positions in the woods on and adjacent to the Benish farm, at 6:00 p.m., on June 27, 1991. The record is unclear concerning their precise location but they were instructed to maintain surveillance throughout the night and keep out of sight by day. There is no evidence that the Guardsmen had permission from any property owner to bivouac on their land.

On June 28, 1991, Guardsman, Joshua Porter was ordered to take up a position on the other side of the residence on the Benish farm but keep out of sight. He testified that he crossed the Benish property and observed a suspected marijuana plant growing approximately 200 meters from the barn. He took a sample and reported the find to his commanding officer. A subsequent field test by the State Police confirmed the finding.

In the meantime, the State Police arranged an overflight of the farm by helicopter, including the commander of the Guardsmen. The helicopter crew observed marijuana growing on the Benish farm and Trooper Rood prepared an affidavit for a search warrant. The warrant was signed by a state court judge on June 30 and a subsequent search of the farm by the State Police and Pennsylvania Army National Guard revealed approximately 900 marijuana plants in various stages of growth. Some were growing within the house and others were located on the property. Samples of the plants were taken and the state court approved destruction of the remaining plants on July 1, 1991. Defendant was indicted in this court on December 10, 1991.

## I.

Defendant's challenge to the overflight of the farm as an alleged invasion of his expectation of privacy must be rejected. The police and the militia had the right to fly over the farm at an altitude of 2000 feet, and the Supreme Court has held that intrusion of the public navigable airspace does not violate the Fourth Amendment. *California v. Ciraolo*, 476 U.S. 207, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986). However, the Court emphasized that such observations must take place from a public vantage point, that is, where the public has a right to be. *Id.* at 213–215, 106 S.Ct. at 1812–14. Neither the public nor the employees of the government have the right

---

1. As the Supreme Court has allowed:
   Admittedly, the Members of the Court decide cases by virtue of their commissions, not their competence. But unless we wish anarchy to prevail within the federal judicial system, a precedent of this Court must be followed by the lower federal courts, no matter how misguided the judges of those courts may think it to be.
   *Hutto v. Davis*, 454 U.S. 370, 375, 102 S.Ct. 703, 706, 70 L.Ed.2d 556 (1982).

to intrude upon private property to gather incriminating evidence without a search warrant, unless the property is an open field. *United States v. Dunn*, 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987); *Oliver v. United States*, 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1983); *Hester v. United States*, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924).

As the dissent in *Oliver* predicted, most citizens would be surprised to learn that the protections of the Fourth Amendment begin at their "curtilage" rather than their property lines, and most citizens of Western Pennsylvania would be shocked to learn that the Pennsylvania Army National Guard can be ordered to active duty to conduct surveillance at a farm in Armstrong County, and bivouac on private property without the consent of the owner.

In *United States v. Dunn*, 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1986), the Supreme Court promulgated a four prong test to determine extent of curtilage questions. The Court held that lower courts should consider (1) the proximity of the area to the home; (2) whether the area is within an enclosure surrounding the home; (3) the nature and uses to which the area is put; and (4) the steps taken by the resident to protect the area from observation by passerbys. *Id.* at 301, 107 S.Ct. at 1139.

■ Applying that test to the instant case, we hold that the positioning of Pennsylvania Army Guardsmen on defendant's property for surveillance and the warrantless search and seizure of a marijuana plant growing at least 200 meters from the barn do not violate the Fourth Amendment. Here, the plant was growing at a greater distance from the residence than the barn was located in *Dunn*. The marijuana plant was not found in an enclosed or posted area of the Benish farm; rather, it was growing in an open area when discovered by the Guardsman. Finally, Garry Benish had not taken steps to shield the plant from observations by trespassers, and the area in which the plant was discovered did not harbor the "intimate activity associated with the 'sanctity of a man's home and the privacies of life.'" *Oliver v. United*

*States*, 466 U.S. at 180, 104 S.Ct. at 1742 (quoting *Boyd v. United States*, 116 U.S. 616, 630, 6 S.Ct. 524, 532, 29 L.Ed. 746 (1886)).

The totality of all observations and findings were submitted to the state court judge and the search warrant was properly issued. We find no evidence of bad faith by law enforcement authorities in the procurement or issuance of the warrant. The motion of defendant to suppress the evidence must be denied.

## II.

■ Defendant's next contention that the destruction of the marijuana requires dismissal of the indictment is without merit. Defendant argues that the failure of local authorities to preserve the bulk of the marijuana plants that were seized deprives him of the right to have an expert examine the plants to determine the number, weight, maturity and presence of THC, if any. We disagree.

■ The Due Process Clauses of the Fifth and Fourteenth Amendments do not require the government to preserve incriminating evidence under all circumstances. *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). The test is one of fundamental fairness. Here, the indictment charges that defendant possessed with intent to distribute in excess of 100 marijuana plants. We note that photographs and a film are available for review by the defense of the entire cache and therefore defendant will be able to contest the number of marijuana plants that were seized, and challenge whether the prosecution has proven the charges of the indictment and the elements of the offense. *Gov't of Virgin Islands v. Testamark*, 570 F.2d 1162 (3d Cir.1978).

The government has also preserved samples of the seizure and defendant will be able to test to determine the presence of a controlled substance. The total weight of the seizure may be relevant for purposes of sentencing, *United States v. Osburn*, 756 F.Supp. 571 (N.D.Ga.1991), but we are satisfied that the state and federal authorities

have acted in good faith, and that defendant's right of confrontation, due process and fundamental fairness have been preserved.

### III.

■ Defendant's final challenge relates to two incriminating statements that he made to the police following his arrest. First, he contends that the statements were neither voluntary nor understandingly made due to the use of cocaine throughout the weekend. Second, he argues that the police failed to advise him of his *Miranda* rights. Third, he urges suppression of both statements because the police allegedly questioned him after he requested the opportunity to speak to a lawyer.

All three contentions raise credibility issues and we are satisfied that the evidence presented by the government preponderates. Various witnesses for the prosecution testified that defendant appeared alert, lucid and normal at the time of his arrest. His speech was neither slurred nor unusual. His appearance was normal as he left the bedroom.

These credible witnesses also testified that defendant was advised of his *Miranda* rights immediately (including, of course, the right to counsel), and indicated that he understood his rights and did not request counsel at any time. Simply put, we find that the witnesses for the government were more believable than the witnesses for the defendant, and therefore defendant's motion to suppress must be denied.

We have given serious consideration to the remaining contentions of defendant and find them without merit.